**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ALBANY DIVISION**

| | |
|---|---|
| MAJORITY FORWARD and GAMALIEL WARREN TURNER, SR., | : <br> : <br> : |
| Plaintiffs, | : <br> : |
| v. | :    CASE NO.: 1:20-CV-266 (LAG) |
| BEN HILL COUNTY BOARD OF ELECTIONS, *et al.*, | : <br> : <br> : |
| Defendants. | : <br> : |

**ORDER**

Before the Court is Plaintiffs' Motion for Temporary Restraining Order (TRO) (Motion) (Doc. 5) in which Plaintiffs seek to: (1) enjoin Defendants from removing any Targeted Voters from the Georgia voter registration lists based on data from the United States Postal Service's National Change of Address ("NCOA") database; (2) enjoin Defendants from preventing any Targeted Voter from casting a regular ballot in the January 5, 2021 runoff elections based on NCOA data; (3) enjoin Defendants from requiring any Targeted Voter to cast a provisional ballot or to present any additional evidence of eligibility based on the NCOA data; (4) require Defendants to make reasonable efforts to inform all Targeted Voters of the terms of the restraining order; and (5) grant Plaintiffs such other and further relief that the Court deems necessary and proper. (Doc. 5 at 3.) For the reasons explained below, the Motion is **GRANTED**.[1]

**BACKGROUND**

Plaintiffs initiated this action against Defendants on December 23, 2020. (*Id.*)

---

[1] The Court notes that Defendants Muscogee County Board of Elections and Registration, Nancy Boren, Margaret Jenkins, Uhland Roberts, Diane Scrimpshire, Linda Parker, and Eleanor White, filed a Motion to Recuse (Doc. 7) on December 28, 2020. The Court has reviewed the motion and finds no basis for recusal. An Order detailing the Court's reasoning is forthcoming.

Plaintiff Majority Forward is a non-profit organization created to support voter registration and voter turnout efforts, and Plaintiff Gamaliel Warren Turner, Sr. is a permanent Georgia resident and a registered voter in Muscogee County. (*Id.* ¶¶ 8–9.) Defendants are Ben Hill County Board of Elections and Registration ("Ben Hill Board"), Muscogee County Board of Elections and Registration ("Muscogee Board") (collectively, "the Boards"), and their respective members, supervisor and chief registrar, and director. (*Id.* ¶¶ 10–23.)

Plaintiffs claim that Defendants frivolously have challenged the eligibility of registered voters in Ben Hill County and Muscogee County to cast a vote during the January 5, 2021 United States Senate runoff elections (hereinafter, the "Runoff Elections") based on data from the National Change of Address registry. (Doc. 1 ¶ 1.) Specifically, Plaintiffs contend that, in violation of the National Voter Registration Act (NVRA), 52 U.S.C. § 20501 *et seq.*, and Georgia law, Defendants improperly and impermissibly have found probable cause to sustain challenges to the eligibility of 152 voters in Ben Hill County and 4,033 voters in Muscogee County based on inaccurate, unreliable, and inconclusive data allegedly drawn from the NCOA registry. (Doc. 5-1 at 7–8.) (The 152 voters from Ben Hill County and the 4,033 voters from Muscogee County are referred to herein as the "Targeted Voters.") Plaintiffs seek a temporary restraining order enjoining Defendants from taking the following actions related to the Runoff Elections: (1) removing any challenged voters from the registration lists in Ben Hill and Muscogee Counties based on data from the NCOA registry; (2) preventing Targeted Voters from casting regular ballots on the basis of NCOA data; and (3) requiring Targeted Voters to cast provisional ballots or present any additional eligibility on the basis of NCOA data. Plaintiffs further seek to require Defendants to make all reasonable efforts to inform all Targeted Voters of the terms of any restraining order entered by the Court.

In-person early voting in the Runoff Elections began on December 14, 2020. (Doc. 1, ¶ 69.) On December 23, after receiving a challenge to the eligibility of 328 registered voters in Ben Hill County from Tommy Roberts, a member of the City Council for Fitzgerald, Georgia, the Ben Hill County Board of Elections voted by a margin of 2-1, to find that there was probable cause to sustain the challenges to 152 of the 328 voters

challenged by Roberts. (*Id.* ¶ 71; Doc. 5-1 at 6, 11). The basis of Roberts' challenges was that the challenged voters had changed their addresses out of state. On information and belief, Plaintiffs allege that Roberts' challenge was based on data from the NCOA registry. Plaintiffs further allege that the county attorney, Nick Kinsley, informed the Ben Hill Board that, in his opinion, probable cause did not exist to sustain the challenges because the list provided by Roberts did not indicate the reason for the change of address, the veracity of the list could not be confirmed, the list would not be admissible in court, and there were better remedies available. (Doc. 1 ¶ 73). Despite this advice from the County Attorney, the Ben Hill Board voted to find that there was probable cause to sustain the challenges. Thus, the Ben Hill Board determined that the status of the 152 Targeted Voters would be marked as "pending hearing," and the Targeted Voters would be mailed notices advising them that they would be allowed only to cast provisional ballots which would be counted only if the voter cured the issue by January 8, 2021 by providing additional evidence of residency. (Doc. 5-1 at 11).

On December 14, 2020, Ralph Russell filed a challenge to the eligibility of 4,033 registered voters in Muscogee County to vote in the Runoff Elections. Russell stated,

> The grounds for my challenge are that I have evidence that there are approximately 4,033 individuals registered to vote in Muscogee county who reside outside of the State of Georgia. This information was gathered by running the Muscogee County voter registration data base against the National Change of Address Registry.
>
> \*\*\*\*\*\*\*\*
>
> I believe that each of the individuals named . . . as a result of registering their name and change of address to a location outside of Muscogee County, removed to another state with the intention of making the new state their residence. Thus, each individual has lost their residence in Muscogee County, and consequently, each individual is ineligible to vote in Muscogee County.

(Doc. 5-2 at 2–3). On December 16, 2020, the Muscogee Board met to consider Russell's challenge. Russell did not attend the meeting, and no additional information was provided to support his challenges. (Doc. 1 ¶ 83). The Muscogee Board voted, by a margin of 3-1,

to find that there was probable cause to support Russell's challenge. Thus, the Muscogee Board placed the names of the 4,033 Targeted Voters (minus any voters on Russell's list who were entitled to vote under the Uniformed and Overseas Citizens Absentee Voting Act) on a list. (*Id*. ¶ 86). The Muscogee Board instructed that any Targeted Voter whose name appears on the list and who attempts to vote in person is to be advised of the challenge and allowed only to cast a provisional ballot. (*Id*.) Any Targeted Voter requesting an absentee ballot will be required to present additional evidence of residency in order to vote. (*Id.*)

Plaintiffs filed an action for Declaratory and Injunctive Relief on December 23, 2020. (Doc. 1). On December 24, 2020, the Court entered an order setting the matter for a hearing on December 30, 2020. (Doc. 2). On December 27, 2020, Plaintiffs filed the Motion for Temporary Restraining Order. (Doc. 5). Plaintiffs argue that the Boards acted in violation of federal and Georgia law in sustaining the challenges and taking their subsequent actions to limit the ability of the Targeted Voters to cast regular ballots without providing additional proof of residency.

## DISCUSSION

### I.  Basis for Temporary Restraining Order

A court may grant a TRO only if the movant demonstrates that "(1) he has a substantial likelihood of success on the merits, (2) he will suffer irreparable injury unless the injunction issues, (3) the injunction would not substantially harm the other litigant, and (4) if issued, the injunction would not be adverse to the public interest." *Long v. Sec'y*, 924 F.3d 1171, 1176 (11th Cir. 2019) (citations omitted). A TRO is an "extraordinary remedy," and courts should "pay particular regard for the public consequences" of granting this type of remedy. *See Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 23 (2008). "*Ex parte* temporary restraining orders 'should be restricted to serving their underlying purpose of preserving the status quo and preventing irreparable harm just so long as is necessary to hold a hearing and no longer.'" *Rose v. Blake*, 2017 WL 3491873, at *1 (S.D. Fla. Aug. 14, 2017) (quoting *Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Local No. 70 of Alameda Cty.*, 415 U.S. 423, 439 (1974)). The focus always must be on

prevention of injury by a proper order, not merely on preservation of the status quo." *Canal Auth. of State of Fla. v. Callaway*, 489 F.2d 567, 576 (5th Cir. 1974).

### A.   Success on the Merits

#### 1.   Violation of the NVRA

Plaintiffs argue that the removal of Targeted Voters from the official list of registered voters for a federal election on the grounds that the voters changed their residences and the challenge hearings ordered by Defendants violate Sections 8(d) and 8(c) of the NVRA because Defendants did not first receive written confirmation from the voter of a change of address[2] and because the challenges did not include the individualized inquiries necessary to sustain challenges made within 90 days of a federal election. As to the Section 8(d) claim, "Where the issue concerns a voter's change of address, as in this case, the NVRA prohibits the removal of that voter unless the voter confirms in writing that he or she has moved outside of the county or does not respond to a notice *and* has not voted in two federal election cycles." *N.C. State Conference of the NAACP*, No. 1:16-CV-1274. at *18–19 (quoting 52 U.S.C. § 20507(d)(1)).

Here, it does not appear that the Boards received written confirmation from the Targeted Voters that they had changed their addresses. The Russell Notice does not indicate that any of the Targeted Voters provided written confirmation of their address changes. Moreover, the declarations filed by Targeted Voters Turner, Burson, Essix, Pfeiffer Stinetorf, Colon, and Williams show that that these voters did not provide Defendants written confirmation that they had changed their addresses. Thus, as Section 8(d)(1)(A) of the NVRA clearly states, in relevant part, that a "State shall not remove the name of a registrant from the official list of eligible voters in elections for Federal office on the ground that the registrant has changed residence unless the registrant . . . confirms in writing that the registrant has changed residence to a place outside the registrar's jurisdiction in which the registrant is registered" and as there is evidence before the Court

---

[2] Defendants also could have met the requirements of Section 8(d) if the voter had failed to respond to a postcard notice and failed to vote in a least two subsequent federal general election cycles. As the Board's decision was not based on the failure to respond to an official postcard or to vote in at least two subsequent federal general elections, the Court does not analyze this issue.

that the Targeted Voters did not provide such confirmation, there is a substantial likelihood of success on the merits on Plaintiffs claim that Defendants violated Section 8(d) of the NVRA.

Likewise, there is a substantial likelihood of success on the merits regarding Plaintiffs' Section 8(c) claim. As noted by the Eleventh Circuit, the 90 Day Provision of the NVRA limits "its reach to programs that 'systemically' remove voters from the voter rolls [but] permits removals based on individualized information at any time." *Arcia v. Fla. Sec'y of State*, 772 F.3d 1335, 1346 (11th Cir. 2014)). "Individualized removals do not present the same risks as systematic removals because they are based on individual correspondence or rigorous individualized inquiry, leading to a smaller chance for mistakes." *N.C. State Conference of the NAACP v. The N.C. State Bd. of Elections*, No. 1:16-CV-1274, at *11 (M.D. N.C. Nov. 4, 2016) (quoting *Arcia*, 772 F.3d at 1346 (11th Cir. 2014)). The Circuit noted that, "the 90 Day Provision strikes a careful balance: It permits systemic removal programs at any time *except* for the 90 days before an election because that is when the risk of disenfranchising eligible voters is the greatest." *Arcia*, at 1346.

Here, the challenge to thousands of voters less than a month prior to the Runoff Elections—after in person early voting had begun in the state—appears to be the type of "systematic" removal prohibited by the NVRA. The Russell Notice does not include the type of individualized information that the Muscogee Board would have needed to undertake the individualized inquiry required by the NVRA; and, based on the declarations from Turner, Burson, Essix, Pfeiffer Stineetorf, Colon, and Williams, had the Boards made the requisite individualized inquiries, it appears likely that the challenges to these voters would not have been sustained. Thus, there is a substantial likelihood of success on the merits of Plaintiffs' Section 8(c) claim.

### 2. Violation of the Right to Vote

There is also a likelihood of success on the merits of Plaintiff's First and Fourteenth Amendment Claim. Plaintiffs argue that the Boards' actions severely burden the right to vote by imposing unjustifiable barriers to casting a ballot in the Runoff Elections in

violation of the First and Fourteenth Amendments. (Doc. 5-1 at 23.) "A law that severely burdens the right to vote must be narrowly drawn to serve a compelling state interest." *Democratic Exec. Comm. of Fla. v. Lee*, 915 F.3d 1312, 1318 (11th Cir. 2019) (citation omitted). "And even when a law imposes only a slight burden on the right to vote, relevant and legitimate interests of sufficient weight still must justify that burden." *Id.* at 1318–19. Such interests may include "preventing fraud[,] promoting the orderly[,] efficient[,] and timely administration of the election[,] and ensuring fairness and public confidence in the legitimacy of the election." *See id.* at 1321. "The more a challenged law burdens the right to vote, the stricter the scrutiny to which [the Court] subject[s] that law." *Id.* at 1319. "The Supreme Court has long recognized that burdens on voters implicate fundamental First and Fourteenth Amendment rights." *Id.* at 1319.

Here, the Boards' decisions to sustain the challenges risk disenfranchising thousands of voters. As explained above, the challenges were submitted less than a month before the Runoff Elections, there is no evidence Defendants received written confirmation from the voter of a change of address, and the challenges did not include the individualized inquiries necessary to sustain challenges made within 90 days of a federal election. The declaration of Colon indicates that Targeted Voters who may otherwise be properly registered may not have the means or resources to travel to Georgia to resolve the challenge before the Runoff Elections. (*See* Doc. 5-8 ¶ 6.) Additionally, the declarations of Berson and Essix indicate that Targeted Voters will have to vote by provisional ballots, which may not be counted. (*See* Doc. 5-4 ¶¶ 9, 12; Doc. 5-5 ¶¶ 3, 9; Doc. 5-6 ¶ 10.) The declarations of Essix, Williams, and Stinetorf also demonstrate that the process of resolving a challenge is a hassle for voters and can prevent them from voting, even though they qualify. (*See* Doc. 5-6 ¶ 11; Doc. 5-7 ¶¶ 8, 11; Doc. 5-9 ¶ 7.) "It is a basic truth that even one disenfranchised voter—let alone several thousand—is too many." *Democratic Exec. Comm. of Fla.*, 915 F.3d at 1321 (quoting *League of Women Voters of N.C. v. North Carolina*, 769 F.3d 224, 244 (4th Cir. 2014)). At this time, there is no evidence of any compelling or legitimate interests the state may have to justify the burden being imposed on the thousands of Targeted voters. Thus, there is a substantial likelihood of success on

the merits of Plaintiffs' right to vote claim.

### B. Immediate and Irreparable Injury

In addition to showing a substantial likelihood of success on the merits, Plaintiffs must also show that there will be irreparable harm if relief is not granted. "[T]he absence of a substantial likelihood of irreparable injury would, standing alone, make preliminary injunctive relief improper." *Siegel v. LePore*, 234 F.3d 1163, 1176–77 (11th Cir. 2000). "[I]rreparable injury 'must be neither remote nor speculative, but actual and imminent.'" *Id.* (quoting *Tucker Anthony Realty Corp. v. Schlesinger*, 888 F.2d 969, 973 (2d Cir.1989)); accord, *Chacon v. Granata*, 515 F.2d 922, 925 (5th Cir.1975) ("An injunction is appropriate only if the anticipated injury is imminent and irreparable."). Plaintiffs contend that challenging voter eligibility and removing voters from registration lists this close to an election carries a significant risk of disenfranchisement. (Doc. 5-1 at 11.)

Here, Plaintiffs have demonstrated that they will suffer irreparable harm. As noted by a sister court, "Courts routinely deem restrictions on fundamental voting rights irreparable injury because once the election occurs, there can be no do-over and no redress." *Ga. State Conference NAACP v. Georgia*, No. 1:17-cv-1397-TCB, 2017 WL 9435558, at *4 (N.D. Ga. May 4, 2017). "The runoff election to select Georgia's [two United States Senators] is imminent . . . ." *Id.* If the Court does not grant a preliminary or permanent injunction, "numerous voters who would otherwise be eligible to vote in the runoff will be denied that right." *Id.* "This is a substantial and irreparable harm." *Id.* "Such an injury to these voters is neither speculative nor remote but is real and imminent." *N.C. State Conference of the NAACP*, No. 1:16-CV-1274, at *22 (quoting *In re Microsoft Corp. Antitrust Litig.*, 333 F.3d 517, 530 (4th Cir. 2003), *abrogated on other grounds by eBay, Inc. v. MercExchange, L.L.C.*, 547 U.S. 388 (2006)). "Significantly, in the absence of an injunction, it is not only would-be [individual] voters like Plaintiff [Turner] who will suffer irreparable harm, but also organizations such as the . . . Plaintiff-entit[y][,] [Majority Forward][,] in this case." *Ga. State Conference NAACP*, 2017 WL 9435558 at *5. Courts have "recognized that conduct that limits an organization's ability to conduct voter registration activities constitutes an irreparable injury." *Id.*

8

### C. Balance of Harms

The next question before the Court is whether the potential harm to Plaintiffs if the Court does not grant the injunctive relief outweighs the potential harm to Defendants if the relief is granted. The relief requested by Plaintiffs will allow voters deemed eligible by Georgia's regular procedures and laws to vote, unimpeded in the Runoff Elections. Failure to grant the injunctive relief could result in eligible voters being denied the right to vote, voters who would otherwise exercise their Constitutional right to vote being intimidated or discouraged from doing so, or eligible voters being forced to go to extraordinary lengths during the holiday season and ongoing Covid-19 pandemic to prove that they are eligible to vote. While the Court acknowledges that an injunction may burden Defendants in their role managing the ongoing election, the harm to voters whose right to vote is wrongfully impeded or denied is far greater. To quote our sister court in the Northern District of Georgia,

> The Court certainly appreciates and understands the inconvenience and expense that entering a preliminary injunction may work upon the State and Defendants. The Court, however, is mindful that the right to vote is a fundamental right and is preservative of all other rights. Denying an individual the right to vote works a serious, irreparable injury upon that individual. Given the right at issue and the likely injury caused by not entering a preliminary injunction, the Court finds that the potential injury to Plaintiffs outweighs the harm to the State and Defendants caused by entering a preliminary injunction.

*Common Cause/Georgia v. Billups*, 406 F. Supp. 2d 1326, 1376 (N.D. Ga. 2005). Accordingly, the balancing of harms favors granting the relief sought.

### D. Public Interest

Finally, the Court must determine whether granting the injunctive relief will serve the public interest. As noted by the Eleventh Circuit, the goals balanced by the NVRA are to:

> (1) increase the number of eligible citizens who register to vote in elections for Federal office;

>    (2) allow for the implementation of the NRVA in a manner that enhances voter participation;
>
>    (3) protect the integrity of the electoral process; and
>
>    (4) ensure that accurate and current voter registration rolls are maintained.

*see, Arcia*, at. 1346. Each of these goals are in the public interest as recognized by Congress when it passed the legislation, the President when it was signed into law, and the Courts each time a provision of the law is upheld. Thus, ensuring adherence to the NVRA is necessarily in the public interest. Moreover, the right to vote is a fundamental right, and securing it is also in the public interest. Accordingly, this factor weighs in favor of granting the requested relief.

## II. Duration

Pursuant to Federal Rule of Civil Procedure 65, TROs are limited to 14 days. Thus, this TRO will remain in effect for eight (8) days from the date of issuance. Any motions for an enlargement of the TRO must demonstrate good cause and must be filed in accordance with the requirements of Federal Rule of Civil Procedure 65(b)(2).

## III. Security

"The court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). "The amount of security required is a matter for the discretion of the trial court; it may elect to require no security at all." *Corrigan Dispatch Co. v. Casa Guzman, S. A.*, 569 F.2d 300, 303 (5th Cir. 1978). The Court finds that no security is required at this point in the proceedings. Should Defendants make a showing that security is appropriate for the issuance of further injunctive relief, the Court will give further consideration to the matter of security.

## CONCLUSION

The Court has considered Plaintiffs' motion for temporary restraining order, supporting authorities, and the evidence and pleadings of record, and finds that: (1) Plaintiffs are likely to succeed on the merits of their claim; (2) Plaintiffs will suffer

irreparable injury unless this Court issues an injunction granting relief; (3) the threatened injury to Plaintiffs outweighs possible harm that the injunction may cause the opposing parties; and (4) the injunction is in the public interest. The Court thus finds that Plaintiffs have clearly established their burden of persuasion as to each of these four factors, and accordingly Plaintiffs' Motion is **GRANTED**.

**IT IS ORDERED:**

(1) Defendants are enjoined from removing any challenged voters in Ben Hill and Muscogee Counties ("Targeted Voters") from the registration lists on the basis of National Change of Address ("NCOA") data;

(2) Defendants are enjoined from preventing any Targeted Voters from casting a regular ballot in the January 5, 2021 runoff elections on the basis of NCOA data;

(3) Defendants are enjoined from requiring any Targeted Voters to cast a provisional ballot or to present any additional evidence of eligibility on the basis of NCOA data; and

(4) Defendants are required to make reasonable efforts to inform all Targeted Voters of the terms of the restraining order.

**SO ORDERED**, this 28th day of December, 2020.

/s/ Leslie A. Gardner
**LESLIE A. GARDNER, JUDGE**
**UNITED STATES DISTRICT COURT**