**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**ALBANY DIVISION**

---

MAJORITY FORWARD; and GAMALIEL
WARREN TURNER, SR.,

           Plaintiffs,

v.

BEN HILL COUNTY BOARD OF
ELECTIONS; CINDI DUNLAP, in her official
capacity as Ben Hill County Elections
Supervisor and Chief Registrar; THOMAS
GREEN, in his official capacity as MEMBER
of the Ben Hill County Board of Elections;
DAVID WALKER, in his official capacity as
MEMBER of the Ben Hill County Board of
Elections; DANNY YOUNG, in his official
capacity as MEMBER of the Ben Hill County
Board of Elections; GUNDRON MILLS, in his
official capacity as MEMBER of the Ben Hill
County Board of Elections; PENSON
KAMINSKY, in his official capacity as
MEMBER of the Ben Hill County Board of
Elections; MUSCOGEE COUNTY BOARD
OF ELECTIONS AND REGISTRATION;
NANCY BOREN, in her official capacity as
Muscogee County Director of Elections &
Registration; MARGARET JENKINS, in her
official capacity as MEMBER of the Muscogee
County Board of Elections and Registration;
UHLAND ROBERTS, in his official capacity
as MEMBER of the Muscogee County Board
of Elections and Registration; DIANE
SCRIMPSHIRE, in her official capacity as
MEMBER of the Muscogee County Board of
Elections and Registration; LINDA PARKER,
in her official capacity as MEMBER of the
Muscogee County Board of Elections and
Registration; and ELEANOR WHITE, in her
official capacity as MEMBER of the Muscogee
County Board of Elections and Registration,

           Defendants.

Civ. Act. File No. 1:20-cv-266-LAG

1

**BEN HILL COUNTY BOARD OF ELECTIONS', CINDI DUNLAP'S, THOMAS GREEN'S, DAVID WALKER'S, DANNY YOUNG'S, PENSON KAMINSKY'S AND GUNDRUN MILLS' RESPONSE TO PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER**

COME NOW, BEN HILL COUNTY BOARD OF ELECTIONS; CINDI DUNLAP, in her official capacity as Ben Hill County Elections Supervisor and Chief Registrar; THOMAS GREEN, in his official capacity as MEMBER of the Ben Hill County Board of Elections; DAVID WALKER, in his official capacity as MEMBER of the Ben Hill County Board of Elections; DANNY YOUNG, in his official capacity as MEMBER of the Ben Hill County Board of Elections; GUNDRON MILLS, in his official capacity as MEMBER of the Ben Hill County Board of Elections; PENSON KAMINSKY, in his official capacity as MEMBER of the Ben Hill County Board of Elections, Defendants in the above-styled civil action (hereinafter referred to as "Ben Hill Defendants"), and file this, their Response to Plaintiff's Motion for Temporary Restraining Order, and shows the Court the following:

## INTRODUCTION

The goal of the Ben Hill Defendants is simply to allow legal voters the right to vote and to prevent illegal votes from being cast. There is no evidence that suggests that the Ben Hill Defendants' actions were taken in bad faith or with partisan interests. Contrary to some accusations, the Ben Hill Defendants have absolutely no interest in disenfranchising legal voters. These defendants, most of whom are volunteers, have become involved for the purpose of conducting a fair election. Plaintiffs' Brief in Support of Motion for Temporary Restraining Order intends to evoke emotion and incite the readers, but the facts of this case are quite ordinary.

Under O.C.G.A. § 21-2-230(a), any elector may challenge the right of any other elector to vote in an election.  If the challenge meets the procedural requirements, the board of registrars has no discretion, but must "immediately consider such challenge and determine whether probable cause exists to sustain such challenge."   O.C.G.A. § 21-2-230(b).   If the board determines that probable cause exists, the statute provides specific steps that must be taken before an elector is prohibited from voting.  It is undisputed that the Ben Hill Defendants followed these steps.  Plaintiffs question whether probable cause existed (although that issue is not present in Plaintiffs' claims) and whether federal law was followed.

As will be shown, the Ben Hill Defendants followed Georgia law and were only trying to prevent illegal voting and/or voter fraud.

## STATEMENT OF FACTS

Mr. Tommy Roberts filed a challenge pursuant to O.C.G.A. § 21-2-230 contesting the eligibility of certain voters based on their address or residence.  [See Ex. 1].  In accordance with Georgia law, on December 23, 2020, the Ben Hill Board of Elections held a meeting to either sustain or deny the challenges.  [Doc. 1, ¶ 71].  After much discussion, the Board of Elections voted 2-1 to sustain the challenge as it related to those who changed their address out of the state of Georgia.  [Doc. 1, ¶ 71].  Stated differently, the Board of Elections found probable cause for those citizens that changed their address to another state.  [Doc. 1, ¶ 71].  At that meeting, a discussion regarding the procedures for allowing citizens to answer the challenge occurred.  The Court's Temporary Restraining Order was entered before a formal process was adopted.

Majority Forward and Gamaliel Warren Turner, Sr., an alleged Muscogee County resident, filed this lawsuit against the Ben Hill Defendants on December 23, 2020.  [Doc. 1].  Following the filing of the lawsuit, on December 28, 2020, this Court entered an Order granting

Plaintiffs' Motion for Temporary Restraining Order.  [Doc. 12, p. 1].  This effectively ended the challenge in Ben Hill County.  No hearings had been held and nobody had been taken off of the voter registration list.

Thereafter on December 28, 2020, at approximately 3:30 p.m., the Ben Hill Defendants received Plaintiff's Amended Complaint, which added Debra Lewis as a plaintiff.  [Doc. 20].  Additionally, Plaintiffs filed a declaration of Debra Lewis wherein she alleges that she was told she was not allowed to vote on December 28, 2020.  [Doc. 21].  However, this was not the case.  Ms. Lewis was never told that she could not vote early; she was told that she could vote early using a provisional ballot.  [Declaration of Cindi Dunlap, Ex. 2].  Likewise, Ms. Lewis voted (using a regular ballot) following the issuance of the Court's Temporary Restraining Order.  [Declaration of Kathleen Searcy, Ex. 3]

<u>**ANALYSIS AND CITATION OF AUTHORITY**</u>

A. <u>**Standard for Motion for Temporary Restraining Order**</u>

"To be entitled to a [temporary restraining order], a movant must show: (1) a substantial likelihood of ultimate success on the merits; (2) the [temporary restraining order] is necessary to prevent irreparable injury; (3) the threatened injury outweighs the harm the [temporary restraining order] would inflict on the non-movant; and (4) the [temporary restraining order] would serve the public interest.  <u>Ingram v. Ault</u>, 50 F.3d 898 (11th Cir. 1995).  Because Plaintiffs have not and cannot prove these elements, they should not be given a temporary restraining order ("TRO").

**Plaintiffs Cannot Prove a Substantial Likelihood of Ultimate Success on the Merits**

Regarding the first element of the analysis, Plaintiffs have failed to meet their burden of proving a substantial likelihood of ultimate success on the merits.  Because Plaintiffs have filed three separate claims, these will be addressed individually.

   *i.*      *52 U.S.C. § 20507(d)*

Plaintiffs' initial claim arises out of 52 U.S.C. § 20507(d)(1) that purports to prohibit the removal of a voter from the list of eligible voters for federal elections on the basis of changed residence, unless the elector confirms the change of residence in writing or fails to respond to a notice and has not appeared to vote for two consecutive federal elections.   As will be described below, Plaintiffs have misinterpreted this statute.

O.C.G.A. § 21-2-230(a) allows for an elector to challenge another elector's right to vote in a specific election.  In Mr. Roberts' challenge, he states that he is challenging "the attached electors' eligibility to vote in the January 5, 2021 Election, pursuant to Georgia Code § 21-2-230." [Ex. 1].  He does not request that the voter be taken off the eligible voter list.  O.C.G.A. § 21-2-229, which is unrelated to this lawsuit and the subject challenge, addresses the issue of removal from the list of electors.  Unlike O.C.G.A. § 21-2-230, Section 8(d) deals with removing a registrant from the official list of eligible voters.  52 U.S.C. § 20507(d).  The Ben Hill Defendants are not required to follow the requirements of Section 8(d), because those requirements only apply to removing an elector from the registration list.

This distinction is very important.  Plaintiffs do not appreciate this difference and ask that the Court essentially quell the subject challenge entirely.  However, the Ben Hill Defendants have full authority (and the duty) to prevent illegal voters from casting a vote.  They may remain

on the eligible voter list for future elections but may not vote in the present election. Therefore, a blanket TRO prohibiting all actions in response to the subject challenge would be improper.

  *ii.*  *52 U.S.C. § 20507(c)*

52 U.S.C. § 20507(c)(2)(A) reads as follows: "A State shall complete, not later than 90 days prior to the date of a primary or general election for Federal office, any program the purpose of which is to systematically remove the names of ineligible voters from the official lists of eligible voters." Plaintiffs argue that the Ben Hill Defendants run afoul of this federal statute because the challenge itself failed to provide an individualized inquiry. [Doc. 5-1, p. 15]. This argument fails for multiple reasons. For example, no voters were removed from the voter list and the Ben Hill Defendants were prepared to offer an individualized hearing pursuant to O.C.G.A. § 21-2-230. In fact, there is no evidence to the contrary.

  The aforementioned provision allows removal based on "individualized information" because it is based on "rigorous individualized inquiry." <u>Arcia v. Florida Secretary of State</u>, 772 F.3d 1335, 1346 (11th Cir. 2014). The 90-day provision prohibits "programs" that "systematically" remove voters. <u>Id</u>. Continually throughout their brief, Plaintiffs seem to equate finding probable cause with removing voters. This is simply incorrect. Responding to a challenge is not a "program" and the Ben Hill Defendants did not and would have not systematically removed voters. Under Georgia law, the challenged electors receive the opportunity to be heard and respond to the challenge.

  Plaintiffs assertion, that the challenge must be individualized, is not found in the statute. The statute and corresponding case law require an individualized *inquiry*. An individualized hearing for each challenged voter would comply. There is absolutely no evidence to suggest that

the Ben Hill Defendants were systematically removing voters.  The fact that no voters had been removed from the voter list makes it clear that a systematic removal did not occur.

### iii.   *First Amendment and Equal Protection*

Finally, Plaintiffs assert a claim under the First Amendment and Equal Protection clause of the United States Constitution.  [Doc. 1, ¶¶ 102-117].  Plaintiffs and Muscogee County defendants have explained the applicable standards.   Therefore, it is unnecessary for the Ben Hill Defendants to do the same.

The crux of this claim is that the Ben Hill Defendants entertained a "mass voter challenge" that was not authorized by state or federal law.  [Doc. 1, ¶ 105].  Plaintiffs inaccurately allege that voters will be forced to cast provisional ballots and take significant extra steps to prove they are eligible to vote.  [Doc. 1, ¶ 107].  This idea is derived from a misunderstanding of Georgia law.

O.C.G.A. § 21-2-230(h) states that a challenged elector shall conduct a hearing prior to the closing of the polls if it is "practical."  The Ben Hill Defendants were prepared to do just that.  In that scenario, if the Board of Elections denied the challenge for a specific elector, that elector would be permitted to vote immediately.  A provisional vote would not be required.

Plaintiffs also mention the hassle of attending a hearing and presenting evidence.  [Doc. 1, ¶¶ 105, 107].  First, the Ben Hill Defendants were never given the opportunity to consider out-of-town voters.  However, with the COVID-19 pandemic, both the Ben Hill Defendants and likely the challenged electors have become quite proficient in conducting and attending virtual meetings.  If virtual hearings were allowed, challenged voters would suffer mere minutes of their day to address this very important issue.

In their Complaint, Plaintiffs argue that "[t]here is no government interest that remotely justifies the Boards' actions."  [Doc. 1, ¶ 112].  This is a wildly inaccurate position to take. "Without a doubt, [the State] has a legitimate and strong interest in preventing voter fraud." Democratic Executive Committee of Florida v. Lee, 914 F.3d 1312, 1322 (11th Cir. 2019).  The Ben Hill Defendants' legitimate and strong interest in preventing voter fraud clearly outweighs a challenged voters' minor inconvenience.

For these reasons, Plaintiff's claim under the First Amendment and Equal Protection is unlikely to be successful and thus Plaintiffs' Motion for Temporary Restraining Order should be denied.

**B.  Plaintiffs Will Not Suffer Irreparable Harm Absent a Temporary Restraining Order**

Plaintiffs argue that irreparable harm will occur absent a temporary restraining order because individuals are at risk of disenfranchisement and Plaintiff Majority Forward is limited in its ability to mobilize and turnout voters for the runoff elections.  Allowing the Ben Hill Defendants to individually consider each challenged elector will not cause irreparable injury or harm.

First, Plaintiffs continually reference a risk of disenfranchisement without any proof. Conversely, if the Ben Hill Defendants were allowed to individually hear all of the relevant cases, there is a very minimal risk of disenfranchisement.  Plaintiffs do not (and could not) argue that disenfranchisement will occur, but only the risk of disenfranchisement.  A risk of disenfranchisement is not a harm at all.

Plaintiff Majority Forward also argues that this will limit its ability to mobilize and turnout voters for the runoff election.  Mr. JB Poersch, President of Majority Forward, argues

8

that these challenges will make it more difficult for Majority Forward to expand voter participation.    [Doc. 5-10. ¶ 6].    This is drastically overstated, considering the Ben Hill Defendants were only considering 152 challenged electors.    One reason for this overreaching statement may be Mr. Poersch's incorrect belief that received a challenge to "thousands of challenged voters." [Doc. 5-10].

Overall, Plaintiffs have failed to meet their burden of irreparable harm.    Therefore, the Motion for Temporary Restraining Order should be denied.

**C.    <u>The Remaining Factors Favor the Ben Hill Defendants</u>**

Finally, the threatened injury does not outweigh the harm and a temporary restraining order would not serve the public interest.    As mentioned above, the Ben Hill Defendants were simply responding to the challenge in good faith, as Georgia law requires them to do.    If a temporary restraining order is in place, the Ben Hill Defendants will be forced to allow voter fraud, even if it is apparent.    The public has an interest in preventing and deterring voter fraud by out of state residents seeking to affect their elections, which clearly outweighs the minimal (if any) risk of disenfranchisement.

The fact that no voters have been removed from the registration list has been discussed *ad nauseam*.    Furthermore, without a restraining order, the Board of Elections would not remove voters or prevent anyone from voting unless the evidence was clear.    There is no evidence of bad faith, discriminatory intent, or partisan action.    The Ben Hill Defendants are only trying to prevent voter fraud and ensure that no illegal votes are counted, which benefits the public interest.

## **CONCLUSION**

For all of the foregoing reasons, Plaintiffs' Motion for Temporary Restraining Order should be denied.

This 30th day of December 2020.

HALL BOOTH SMITH, P.C.

/s/ Anthony A. Rowell__
ANTHONY A. ROWELL
Georgia Bar No.: 616930

/s/ Hank Pittman_____
HANK PITTMAN
Georgia Bar No.: 581271

/s/ Nicholas A. Kinsley__
NICHOLAS A. KINSLEY
Georgia Bar No.: 273862

*Counsel for Defendants*

1564 King Road
Tifton Georgia 31793
(229) 382-0515 – Telephone
(229) 382-1676 - Facsimile

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I have this day served a copy of the within and foregoing BEN HILL COUNTY BOARD OF ELECTIONS', CINDI DUNLAP'S, THOMAS GREEN'S, DAVID WALKER'S, DANNY YOUNG'S, PENSON KAMINSKY'S AND GUNDRUN MILLS' RESPONSE TO PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER with the Clerk of Court using the CM/ECF system which will automatically send e-mail notification of such filing to all counsel of record and pro se Plaintiffs, as well as by placing a copy of same in the United States Mail, in envelopes with adequate postage affixed thereon to ensure delivery to all pro se parties.

This 30th day of December, 2020.

HALL BOOTH SMITH, P.C.

/s/ Nicholas A. Kinsley
NICHOLAS A. KINSLEY
Georgia Bar No.: 273862
*Counsel for Defendants*

1564 King Road
Tifton, Georgia 31793
(229) 382-0515