IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ALBANY DIVISION

| | |
|---|---|
| MAJORITY FORWARD, *et al.*, : | |
| : | |
| Plaintiffs, : | |
| : | |
| v. : | CASE NO.:   1:20-CV-266 (LAG) |
| : | |
| BEN HILL COUNTY BOARD OF : | |
| ELECTIONS, *et al.*, : | |
| : | |
| Defendants. : | |
| : | |

# **ORDER**

Defendants Muscogee County Board of Elections and Registration, Director of Elections and Registration Nancy Boren, and the members of the Muscogee County Board of Elections and Registration (collectively, the "Defendants") filed a Motion for Recusal for the undersigned pursuant to 28 U.S.C. § 455 (Doc. 7). In the Motion, Defendants seek to disqualify the undersigned because of advocacy and organizing work done by my sister, Stacey Yvonne Abrams ("Abrams").

Every federal judge takes some form of the following oath:

> I, Leslie Joyce Abrams, do solemnly swear that I will administer justice without respect to persons, and do equal right to the poor and to the rich, and that I will faithfully and impartially discharge and perform all the duties incumbent upon me as a United States District Court Judge under the Constitution and laws of the United States. So help me God.

*See* 28 U.S.C. § 453. This oath demands impartiality. It also demands that I carry out my duties as a United States District Judge. As explained below, to recuse under these circumstances would be a dereliction of duty and a violation of my oath. Therefore, after consulting the case law, the codes of ethics, and the additional resources made available to federal judges when ethical questions are raised, I humbly decline to do so.

## LEGAL STANDARD

Section 455(a) states that a judge "shall disqualify [herself] in any proceeding in which [her] impartiality might reasonably be questioned." 28 U.S.C. § 455(a). Section 455(b) enumerates additional circumstances requiring recusal. Specifically, § 455(b)(5)(iii) provides, that a judge "shall also disqualify [herself] [where] a person within the third degree of relationship . . . is known by the judge to have an interest that could be substantially affected by the outcome of the proceeding." The test of whether to recuse is one of objective reasonableness, that is, "whether an objective, disinterested, lay observer fully informed of the facts underlying the grounds on which recusal was sought would entertain a significant doubt about the judge's impartiality." *Parker v. Connors Steel Co.*, 855 F.2d 1510, 1524 (11th Cir. 1988); *see also Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 859–60 (1988).

While recusal is appropriate "whenever the proper grounds exist," "[t]here is as much obligation for a judge not to recuse when there is no occasion for [her] to do so as there is for [her] to do so when there is." *Carter v. W. Publ'g Co.*, 1999 WL 994997, at *2 (11th Cir. Nov. 1, 1999) (Tjoflat, J., addendum to pro forma order denying recusal motion) (citation omitted). A "judge, having been assigned to a case, should not recuse [herself] on unsupported, irrational, or highly tenuous speculation." *United States v. Greenough*, 782 F.2d 1556, 1558 (11th Cir. 1986); *see also United States v. Cerceda,* 188 F.3d 1291, 1293 (11th Cir. 1999).

## ANALYSIS

**I.    28 U.S.C. 455(a) Does Not Require Recusal.**

This motion presents exactly the type of unsupported, irrational, and highly tenuous speculation the Eleventh Circuit warned against. While there is no specific argument on this point, Defendants appear first to seek to disqualify me pursuant to § 455(a) because I am "the sister of Stacey Abrams, a Georgia politician and voting rights activist who was the Democratic candidate in the 2018 Georgia gubernatorial election and has since engaged in various highly-publicized efforts to increase voter registration and turnout for the 2020 general election in Georgia." (Doc. 7-1 at 4.) One can only assume that the

2

argument is something to the effect that if my sister is actively engaged in a cause, I cannot be impartial. This argument is mere speculation, unsupported by any facts that would support a finding of partiality.

The law does not require, nor does it encourage, judges to abandon their duties without good cause. "If Congress had wanted judges to abandon all caution in deciding motions to recuse, they would have enacted a scheme of disqualification on demand." *Carter*, 1999 WL 994997, at *2; *see also Thomas v. Trs. for Columbia Univ.,* 30 F. Supp. 2d 430, 431 (S.D.N.Y. 1998) (a judge must not disqualify herself unnecessarily, or else "litigants would be encouraged to advance speculative and ethereal arguments for recusal and thus arrogate to themselves a veto power over the assignment of judges.") This is because "there is the need to prevent parties from . . . manipulating the system for strategic reasons, perhaps to obtain a judge more to their liking." *Carter*, 1999 WL 994997, at *2 (quoting *FDIC v. Sweeney* 136 F.3d 216, 220 (1st Cir. 1998)). "A judge who removes [herself] whenever a party asks is giving that party a free strike, and Congress rejected proposals . . . to allow each party to remove a judge at the party's option." *Id.* (quoting *New York City Hous. Dev. Corp. v. Hart,* 796 F.2d 976, 981 (7th Cir.1986)). "Congress has adamantly chosen to avoid the pitfalls of judge-shopping by forcing litigants to demonstrate some reasonable basis for a recusal motion; parties in federal courts do not have carte blanche to disqualify a judge who is not to their liking." *Id.* at *3.

Recusal decisions under "§ 455(a) are extremely fact driven and must be judged on their unique facts and circumstances. . . ." *In re Moody*, 755 F.3d 891, 895 (11th Cir. 2014) (internal quotation omitted). In a 2017 case in California, a party sought to disqualify a judge based on public sentiments expressed by his wife. *Nat'l Abortion Fed'n v. Ctr. for Med. Progress*, 257 F. Supp. 3d 1084, 1090 (N.D. Cal. 2017). The court noted that—even in the close relationship of spouses which arguably is held to higher scrutiny than siblings—while "marriage imposes some limits on each partner's personal autonomy, spouses do not give up their freedom of thought and expression. . . . No thoughtful or well-informed person would simply assume that one spouse's views should always be ascribed or attributed to the other in the absence of an express disclaimer." *Id.* My

3

relationship to my sister sets no limits on my autonomy, and I have certainly not given up my freedom of thought and expression. No objective, disinterested, lay observer would simply assume that just because my sister advocates for a position, that the position can be ascribed to me. Nor would the "average person on the street [] reasonably believe the undersigned would approach a case in a partial manner due to [my sister's] independent views regarding a subject [no matter how] publicly expressed[.]" *Akins v. Knight*, 2016 WL 127594, at *3 (W.D. Mo. Jan. 11, 2016), *aff'd*, 863 F.3d 1084 (8th Cir. 2017).

Defendants also highlight the media attention Abrams has garnered, dropping three footnotes referencing articles and stating, "[v]arious national news outlets have reported on Abrams' central involvement in voter registration drives in Georgia. . . ." (Doc. 7-1 at 6-7; *see also* nn. 4-6).

> [A] judge, having been assigned to a case, should not recuse [herself] on unsupported, irrational, or highly tenuous speculation. If this occurred the price of maintaining the purity of the appearance of justice would be the power of litigants or third parties to exercise a veto over the assignment of judges. '[O]ur inquiry cannot stop with the questions: have a number of people thought or said that a judge should not preside over a given case? has the judge's failure to recuse [herself] been a subject of unfavorable comment in the media? or, would the judge have avoided controversy and the need for appellate review had [she] stepped aside?' Rather, a charge of partiality must be supported by facts. 'Although public confidence may be as much shaken by publicized inferences of bias that are false as by those that are true, a judge considering whether to disqualify [herself] must ignore rumors, innuendos, and erroneous information published as fact in the newspapers[.]'

*United States v. Greenough*, 782 F.2d 1556, 1558–59 (11th Cir. 1986) (internal citations omitted) (quoting *In re United States,* 666 F.2d 690, at 694-95 (1st Cir.1981)). The press coverage of Abrams does not establish a factual basis for my disqualification, nor does the clamor which has ensued since this matter was randomly assigned to me.

## II.     28 U.S.C. 455(b)(5) Does Not Require Recusal.

Defendants' more specific argument is made pursuant to § 455(b)(5) and appears to assert that I should recuse myself from hearing this matter because I purportedly know that my sister, who is within the third degree of relationship, has an "interest that could be

4

substantially affected by the outcome of the proceeding." 28 U.S.C. § 455(b)(5)(iii). Defendants assert that Fair Fight, Inc., an organization founded by Abrams, has sued a Texas organization called True the Vote and others in an action in the United States District Court for the Northern District of Georgia (the "Northern District Action"). According to Defendants, Plaintiffs in the Northern District Action are "seeking declaratory and injunctive relief preventing voter challenges in each of Georgia's 159 counties based on the NCOAR," the National Change of Address Registry. (Doc. 7-1 at 5.) Defendants also note that lead counsel is the same in the Northern District Action and the action before me. (*Id.*) Defendants, therefore, argue that,

> Abrams' involvement in the [Northern District Action], which involves allegedly identical issues related to the NCOAR and overlapping counsel, is sufficient to satisfy the standard for mandatory judicial recusal under 28 U.S.C. §455. . . . The resolution of Plaintiff's claims in this case will bear directly on the outcome of the ongoing [Northern District Action], Abrams interests will necessarily be substantially affected. . . .

(*Id.* at 6-7).

While the phrase "'any . . . interest that could substantially be affected' is not statutorily defined and 'it is not easy to conclude what [it] means,'" the Eleventh Circuit has endorsed a reading of the word substantial "to depend on the interaction of two variables: the remoteness of the interest and its extent or degree." *In re Moody*, 755 F.3d at 894, 897 (quoting *In re Va. Elec. & Power Co.,* 539 F.2d 357, 367 (4th Cir.1976)). Here the interest is, to the extent it exists at all, extremely remote. First, to be clear, neither Fair Fight, Inc., nor any other organization founded by or directly affiliated with Abrams are party to the instant lawsuit. Neither is True the Vote a party to the instant action. The question before the Court in this case is whether Muscogee and Ben Hill Counties violated the Constitution and federal and state law by sustaining challenges to the eligibility of voters to cast votes in the January 5, 2021 runoff election. Whether issues related to Muscogee County voters are raised in the Northern District Action has no bearing on this case what-so-ever; and any effect this action might have on the Northern District action is

highly speculative. This is clear from the tenuous wording of Defendants' argument: "This would include the Russell challenge[1] to the extent Fair Fight can prove—as has been alleged—that True the Vote is involved therewith." (Doc. 7-1 at 5.) So, according to Defendants, the Northern District Action is only related to the case before me to the extent that Plaintiffs in the Northern District Action can prove that True the Vote was involved in the challenges to the Muscogee County voters. Not only is this assertion the type of highly tenuous speculation that judges have been advised not to entertain, it is just plain wrong.

It is well settled that this Court's opinion will not be binding precedent in the Northern District of Georgia Action. A "district judge's decision neither binds another district judge nor binds [her.]" *McGinley v. Houston*, 361 F.3d 1328, 1331 (11th Cir. 2004); *see also Georgia State Conf. of Natl. Assn. for Advancement of Colored People v. DeKalb Cnty. Bd. of Registration and Elections*, 2020 WL 5239127, at *6 (N.D. Ga. Sept. 2, 2020) ("[A] fellow district court judge's opinion is not binding precedent."). Nor does the fact that counsel in this case is also counsel in the Northern District Action require recusal. Defendants have made no allegation that there is any prior relationship between the undersigned and counsel in this matter that would require recusal, and Defendants have offered no legal reason that counsel is conflicted from representing these different parties in different proceedings in different courts. The undersigned has no professional or personal relationship with the attorneys in this case or any input or control on which counsel Fair Fight retains. The parties' choice of counsel casts no judgment on my impartiality, and decisions in this case regarding the parties' counsel will not affect the outcome of the Northern District Action.

## CONCLUSION

To paraphrase my learned and eloquent fellow judge here in the Middle District of Georgia,

> No legitimate reason exists for the undersigned to abandon [her] post in this litigation. As has been noted in this Circuit

---

[1] Ralph A. Russell filed an elector challenge of the eligibility of 4,033 voters in Muscogee County.

>and others, 'there is as much obligation for a judge not to recuse when there is no occasion for [her] to do so as there is for [her] to do so when there is.' Recusal under the circumstances presented here would be a dereliction of duty.

*Youngblood-W. v. AFLAC Inc.*, 2018 WL 5019391, at *13 (M.D. Ga. Oct. 16, 2018), *aff'd*, 796 Fed. Appx. 985 (11th Cir. 2019), *cert. denied*, 141 S. Ct. 267 (2020) (*quoting Carter*, 1999 WL 994997, at *2). Accordingly, Defendants' Motion for Recusal (Doc. 7) is **DENIED**.

      **SO ORDERED**, this 31st day of December, 2020.

      /s/ Leslie A. Gardner
      **LESLIE A. GARDNER, JUDGE**
      **UNITED STATES DISTRICT COURT**